Gentlemen of the court, as far as plaintiff is concerned, this is a relatively straightforward issue that we're addressing. Appellees admit on pages 3 to 4 of their brief that the facts are in dispute. Plaintiff's facts show that Mr. Roberson was never in possession of any narcotics and never exchanged them with anybody. Appellees' facts, according to what we contend is a falsified police report, state that there was indeed an observed exchange of narcotics for money. Two very different sets of facts. I think you might have pushed the record a little bit there. You said there was an exchange. I don't think there was ever an assertion that you saw an exchange of narcotics. You said there was a prior exchange. Your Honor might be right on that. I'm not sure because it might make a difference, but I don't think he ever said, I saw narcotics changing hands before the money exchange. I think your Honor is right. But the exchange, according to that sequence, would have happened before the narcotics were handed to the officer. I think what you said is exactly right, but I think what you are suggesting maybe is that the inferences, because this exchange took place before the alleged handing off of narcotics, that the exchange must have been an exchange of narcotics, because there would have been no money yet. Or would the money have been handed over yet? No, no. You're exactly right, your Honor. I was going to say exactly what you just said to his Honor. In the probable cause situation we're dealing with, what difference does it make? You can throw all that out. Just excise what the police officer has allegedly manufactured as evidence, and you still have evidence that he did ask for drugs. He was provided with drugs by this woman, and he gave her a marked $20 bill, and she immediately goes over and hands it to Roberson. If that isn't enough for probable cause, then we'll all go home. But if we do have probable cause, so what if he made a false statement? So what if he made a false police report? Unless you could show me law that says in your lawsuit, if there was probable cause, that we have a 1983 action to police the police officer, other than other methods, we shouldn't be here. Well, it's not just about probable cause to actually arrest the guy or search him, your Honor. Devereaux makes it exceedingly clear that we have a clearly established right to not be prosecuted on the basis of falsified evidence. What are the Devereaux tests? There's two Devereaux tests. Did they know that he was innocent, but they continued to either investigate or prosecute, or did they continue to investigate when they had falsified the evidence? Devereaux, as I remember, was a child molestation case, and they were working the investigation, and they were trying to manufacture evidence. This guy just flat out, they were trying to get other people, third parties, to come up with the evidence. This guy just makes it up and says, according to you, he just writes in the thing there that there was an exchange. I think Devereaux is factually different, and you've alleged malicious prosecution, but somehow you're incorporating in that this falsification of evidence. Which one are you going on? Well, your Honor, they're intertwined. You think Devereaux is your major case, sir? Yes, your Honor. I don't think that anybody could realistically say the officer didn't have probable cause to at least pat the guy, or reasonable suspicion to pat the guy down. The Abduwabi case of our court, which is a 204 case, are you familiar with that? No, your Honor. A-W-A-B-D-Y? That seems to be more applicable to here, but if you're not familiar with it, I won't waste the Court's time with it. Of particular concern to plaintiff, your Honor, is the fact that the Court said so long as there's some probable cause somewhere to believe that a crime has been committed, then the officer can bolster that probable cause through the fabrication of a police report. When those police reports get to the district attorney's office, your Honor, the district attorney reviews those to see if- There's no evidence of that in the record that I can see. I mean, I understand what you're saying. If there was evidence in the record that the prosecutor had said, this is a lousy case you've got here, but boy, I'll tell you, this police report really bulks it up. We don't have anything at all. The government, as far as I can tell, has conceded your facts. The summary judge, they conceded your facts 100%. Throw them out. Throw out the unlawful manufacturing evidence. What do you have left? Your Honor, it's a malicious prosecution action. Under Devereux, citizens do not have the right to not be prosecuted based on fabrication. Furthermore, it's very, as I was saying, the district court's position on it is very concerning. If there is some probable cause to believe some crime has been committed, then the officer can go ahead and file a police report. He can fabricate evidence to bolster his case against an arrestee. It was almost difficult to come up with an argument for that because it seems so counterintuitive to everything I've ever known about civil rights law. Let's get down to the law, civil rights law. You filed 1983 action. Which constitutional provision is the Constitution relying on? The Fourth and Fifth Amendment, Your Honor. Okay. And the Fourth Amendment is going to substantiate what? A falsification of evidence claim? Your Honor, the unreasonable seizure claim, Your Honor. Despite the fact that it was a seizure? Yes, Your Honor. The cases in the Ninth Circuit have helped, and I don't have the case name for you off the top of my head, Your Honor. I should have, but I apologize to the court. Well, that's what this is all about, is these cases. You've relied on Devereaux so far, and I'm still trying to figure out which constitutional provision you're trying to incorporate in your 1983 action as to which cause of action you've alleged. Well, Devereaux is a substantive due process. Yes, Your Honor. What's your authority for that? Devereaux. I lost my train of thought a little bit, Your Honor. So, again, as I was saying, the court's finding and the court's assertion that an officer can lie, it's troubling, and that's part of the reason we're here. You know, there's no doubt that it's troubling, but that's not really the test. I mean, the test is whether or not your client was damaged by the lie or the alleged lie or the bit of lie that we have to presume existed for purposes of this appeal. And it seems to me there are a couple of places where the lie could have made a difference. One of them is it could have made a difference in whether or not he was arrested. But I think you have conceded, or if not, I think it's pretty clear that there was probable cause, as Justice Bonetti suggested, even if we take the facts as your client alleges. Your Honor, and that's why I backtracked on it as I was saying probable cause. Why don't you let Kavinsky finish? He said there were a couple of – there are two possibilities. Do you agree that there was probable cause even without the lie? And that's why I backtracked on that. I think there was a reasonable suspicion that something had happened, and that could give Mr. Beard the right to maybe detain my client and search him. I see. So you're disputing – you're suggesting that if we take your client's sequence of events, which is that the intermediary, the woman – Germaine Walker, Your Honor. handed the drugs to the agent, got the $20, and only afterwards walked down to your client and handed him the money, and the marked bill wound up in his pocket, that you don't think that's a most probable cause? No, Your Honor, it can't, for the simple fact that there is no – it is not a crime in California to accept money from somebody. It is a crime to provide narcotics to somebody. Let's get past that. Let's say we may agree with you on that. I understand your position on that. Yes, Your Honor. So if we agree with you on that, then you win on that ground, because there was – he manufactured probable cause. Yes, Your Honor. Okay. Let's say we disagree with you on that point. The next point where the lie could make a difference would be in the decision to prosecute. Yes, Your Honor. Okay. And the question then would be whether or not – since the agent – the officer doesn't make the decision to prosecute as a prosecutor, is whether the lie is so substantial that it would have made a difference between a prosecutable and a non-prosecutable case. Yes, Your Honor. And for that, we look to Hartman, don't we? Yes, Your Honor. The next point where this might come up is if you go to trial and the officer lies. Yes, Your Honor. But this didn't happen, did it? No, Your Honor. So you really – if we don't buy into your argument about probable cause, you are stuck trying to persuade us that the prosecutor would not have brought the charges, applying the Hartman standard. And Hartman seems to be very difficult for you to get over. Yes, Your Honor, except that we have one fact here that really helped, I think, should sway the court in our favor, which is with these facts later, with the evidence of Mr. Beard's propensities to fudge on the details that we noted, the district attorney, a couple years later, capitulated to Mr. Roberson's – You know, we are not told much about what exactly happened and why your client got let out of prison. I didn't see it, at least, in the record here. Yes, Your Honor. You're right, Your Honor, but the court, in holding that an officer can lie, didn't bring that into issue, and that's why we did not include it in our record. I don't understand that statement. What does that mean? Well, the court said no matter what happened, no matter what happened, there was probable cause to arrest, and therefore, even – this factual scenario gave probable cause to arrest, therefore, even though the officer lied in the – Well, you're back to where I was before. You're arguing a stand-alone fabrication of evidence, 1983 claim, an S.Y.S., where you put part of the Constitution. Based on that, I think you came to due process. And the Fourth Amendment right to be free from unreasonable seizures, Your Honor, because we believe there was no probable cause – Your search and seizure is not part of your appeal, as far as I can see. Well, Your Honor, we're stating that there was no probable cause to arrest because probable cause cannot be based in fabricated evidence. All right. We're over time now, but we'll give you a minute or two for rebuttal. Thank you, Your Honor. Good morning, Your Honor. If it may please the court, Joe Quinn for Officer Beard, and with me today is Amy Field for the city. If the court has any questions about the city's liability, Ms. Field is prepared to address it, and I'm focusing on Officer Beard's liability. How do we know what effect – we have to assume for purposes of similar judgment that the report was not correct when it said that he saw the passing of the bill before the sale was completed, but the facts are that that was untrue and that he may have seen the passing afterwards. Correct. How do we know what effect the report and the false part of the report had on the prosecutor's decision to proceed with the case? And that's as to the malicious kind of prosecution angle or claim in the complaint. And what Hartman says is that the 1983 claim fails necessarily if probable cause existed. So you've got to go back to was there probable cause to make the arrest. And even if the facts were as if the plaintiff alleged or, you know, states them, Officer Beard had probable cause to arrest a plaintiff. There was – there's no question there was a drug transaction. There was no question that within five to seven seconds, Roberson had the money, the marked bill. There was no question that Roberson was in the block during the transaction, that Roberson was approaching Walker during the transaction. I think that it's pretty much – There's at least one version of the events that makes all of that consistent with the plaintiff's story, and that is Walker, I thought, at some point said that she saw Beard drop a can of beer or a can of something, and she recognized that as a signal and deduced that he's a police officer from that. So she found the next person she could and sort of handed him the money because she didn't want to be caught with a marked bill. And then she swallowed or tried to swallow the piece of the rock that Beard had given her. Right. So, again, we have to sort of accept that as part of the plaintiff's case. But here we're only talking about probable cause, which is something less than the money. Well, without probable cause to arrest. Right. And why would there be probable cause? So somebody is involved in this transaction, and is fleeing from the officers, having recognized them as – that she's been in the sting. And so the next person that comes along, who may be me or Judge Reinhart on the street, hands $20. Well, most people take $20 if handed to them. Take or beware, perhaps. Now I know to be careful. It's not the kind of thing you normally say, no, I won't. I'm just wondering, is there really probable cause? Your Honor, again, we are only talking about probable cause and not evidence beyond a reasonable doubt. And had the plaintiff gone to trial, perhaps there would have been a different outcome. But, yes, there is probable cause here. Possession for sale and intent to sell is often proved by circumstantial evidence. And the reasonable inferences that can be made from that circumstantial evidence. The circumstantial evidence here matches – basically, this is nothing different from if Officer Beard went into a store, bought a product from the clerk, and the owner ended up with the money within five seconds. It's reasonable to infer that it was the owner's – the owner owned the product – the owner of the store, I should say – owned the product and is responsible if that sale was illegal. Well, but there you have a little more. You've got the business establishment, you know, presumably the owner is on the lease. I mean, you know, there's the physical enclosure of the store. So you've sort of built into your hypothetical a lot of facts that don't exist here. I mean, what if this were not Adams Boulevard, which I think is where this happened, right? Oh, Harvard and Venice. Venice, Adams. I mean, it's that part of town, which we know is – often these kind of things happen, occasionally these things happen. Let's say this were Odell Drive. And, you know, it's a nice Saturday morning, and you've been to Odell Drive Saturday morning. There's a lot of people around. And you get a $100 bill instead of a $20. Yeah, that might be more enticing. Yeah, something like that happens. And then the person fleeing from the police finds the next person that comes out of one of those swanky stores and says, here, and has the $100 bill off. I mean, the – I can – I mean, I understand the point. I'm sort of wondering, you know, do you take whoever is there on the street and happens to be unlucky enough to be handed the money to – You might have a lot of explaining to do at that point. But, you know, the facts are a little different here, though, Judge Kuczynski. It's that the exchange of the money and presumably the explanation all happened within five to seven seconds. She wasn't fleeing the police. She was still near – I mean, this is the facts in light most favorable to the plaintiff. She was still standing near the tree where she retrieved the drugs, and Roberson approached her. She didn't approach Roberson. Actually, I'm not clear whether they say Roberson – she approached Roberson, but let's say he did. I have the impression that there was – that he was off in the distance somewhere, and that Walker saw him off in the distance and sort of somehow communicating emotionally to come over and went towards him, and basically said, oh, that's the $20 I owe you. It's a little sort of a phony story, but – Right, and then you can explain it. Well, you don't have to worry about the story. When the officer sees his transaction, is that probable cause? But her story is one possible explanation. There could be five others also. She could have owed him $20 from a football bet, and he happened to be there, and this was a good opportunity to pay it off. True. She might have done that even – that's one explanation that could have happened even if she hadn't heard the can drop. She's an honorable woman who likes to pay her debts at the first opportunity. The other – one other possible explanation is that she was giving him the $20 because of the narcotics transaction. The question is, whatever explanations there might be, would seeing that occur right after the transaction constitute enough to be probable cause, or as your opponent said, would it only be reasonable suspicion? There's not a lot to say about that. That's a question of judgment. Correct. And to find a case that answers that question. And there is – Some people might well think it's probable cause. Others might not. That's what we have to decide. I'd like to get back, since we've only got two minutes, to my other question. What was the case you're relying on that says to answer my question to you about – Hartman. Hartman. Is that cited in your brief? It actually came out after the briefing, and I should have submitted it to the court. It's discussed in Skoog, which I did send to the court. Hartman is a 2006 U.S. Supreme Court case. And what does it hold that helps you? Hartman held that essentially a 1983 claim for malicious prosecution fails if there is probable cause for the arrest. So absence of probable cause is an element. Hartman was actually a retaliatory prosecution case. True. So was Skoog. And Skoog is a retaliatory prosecution case, and specifically a First Amendment retaliation. I don't mean to contradict you, but at least as a matter of historical fact, it is not a malicious prosecution case. It is a retaliation case. Now, I can't think of any difference between them, and you may be entirely justified in treating them as equivalent. But at least it's worth noting that they are not exactly the same. You have to make that leap. Fair enough, Judge Kuczynski. And actually, from what I remember of reading Hartman last night was that they actually relied on the general paradigm for malicious prosecution. Well, it's a pseudo-opinion, so it's not so easy to get the full picture. Right. More likely to be accurate. I'm sorry? Oh, right. I'll submit that issue to the court. But what I understand Hartman to say, assuming it is directly applicable to our case, is that you essentially have to subtract the perjured, not what we call perjured, but the false evidence, and then ask yourself, would the prosecutor still have prosecuted on the facts minus the bad stuff? And I'm not sure how you exactly do that. That brings me back to the question. It's the same question I asked. Do they prosecute every case in which there was probable cause for an arrest, or does more go into it than that? As far as I know, a lot more goes into it. I mean, the DA has – How do you know to what extent the falsehood had an effect on the decision to prosecute? Exactly, Your Honor. And this was summary judgment, and it's the plaintiff's burden to show that the falsehoods did have an effect on the decision. There's no evidence whatsoever of that in the record. We don't have no evidence. Exactly. There's no evidence. All we have is the fact that we have, it walks like a duck, it sounds like a duck, so it's got to be a duck probable cause. Correct. Because they've admitted, the government admitted all those facts and just forgot about it. So unless you can tell me where the 1983 constitutional action is for falsifying a report, then I'm at a loss. And that's what I try to get from another counsel. Where is that cause of action? And, you know, and Devereux does talk about it. I'm not sure your position is that it's the plaintiff's burden to prove it at this point. It's the plaintiff's burden to raise an issue as to whether this was the cause of the prosecution. Right. Don't facts themselves raise an issue? In order to have a false prosecution case, do you have to subpoena the district attorney and question them about the policy? Or do you have to show, suppose they showed there was no basis for it other than the false statement. Would you still have to bring in somebody to say what effect did this have on your decision? I think you have to make some showing about what the prosecutor knew. We don't even know whether the prosecutor had their arrest report here. That's not even in the record. There's nothing in the record about what the prosecutor based his decision on. Devereux wasn't a mixed case, though. It wasn't probable cause. In the other case I read, I don't think of it that way. This case is different because if you find there was probable cause, then the false statements stand on its side. The other cases are not resting that way, as I understand it. I understand them the same way, Judge Brennan. And just one point in closing, which was something that – Before you get to your closing, how exactly do you propose that a plaintiff prove this? You say this Mr. Robinson didn't make it here. What would be a case where a plaintiff does make it? Or how do you think he should have gone about making this point? Did he have to depose the prosecutor? I think in the cases that I have seen that dealt with malicious prosecutions in the 1983 context, there was clearly evidence about what the prosecutor knew. And in fact, actually, yes, there are many cases where the prosecutor was deposed. I could actually give the court one, which is another new case. It's a district court case, so I didn't send it to the court, but it's Tennyson v. City of San Francisco, a decision by Judge Wilkin up in the northern district, 2006 Westlaw 733470. And that's a case where they alleged a 1983 malicious prosecution, and there was substantial evidence about what the prosecutor knew and how the prosecutor made her decision in that case. Judge Wilkin didn't say that you can't make out a case unless you interrogate the prosecutor. No, she did not. That was one with a very thorough, careful lawyer who did maybe more than he had to do. Perhaps, Your Honor. But I think that you have to know something about what the prosecutor knew and what they based their decision on. And here, it's just silent, what the prosecutor knew. Be careful what you're asking for. I mean, do you really want prosecutors being deposed in all these cases? No. But it's almost, you know, if we buy into your theory, and let's say we publish an opinion saying this here, Mr. Robinson loses because his lawyer didn't depose the prosecutor, I mean, the next case would be malpractice not to do that. Right. And so I would not suggest that the court publish an opinion saying that. I would suggest that the court say if there's no evidence in the record. Affirmative. Well, that's another alternative. Well, aren't we losing track of the whole thing? This is summary judgment. Yes. We're back to sellotex. I mean, if you got a case, make the case. If you don't have a case, it has nothing to do with who you deposed or what's in the record. If you don't put it in the record, there could be many things you could put in the record about who had knowledge about what and where the report went. There's nothing in this record. Yes, Your Honor. Actually, that's a fine closing. So with that, I submit. Thank you. Judge, we'll give you a minute or two. Your Honor, again, we believe that the district attorney's decision, concession of. . . Well, the district attorney's concession isn't in the record. I understand, Your Honor, because the district court did not make its decision based on that. Well, how could it make it based on it if you didn't put it in the record? But concession of the district attorney itself. . . I don't know what the district attorney conceded. Yes, Your Honor. But what the district. . . Is that something that is capable of being taken judicially, that we can take judicial notice of? Yes, Your Honor. So prior to the judicial decision, it's an order from the court, from the LA Superior Court. And it's something that this particular district court has dealt with a million times. We wouldn't be in the court. . . Are you familiar with Federal Rule 201, judicial notice? There are certain requirements here. . . Yes, Your Honor. . . . that you need to meet to do that. Yes, Your Honor. It's not too late. I don't have the rule right off the top of my head, Your Honor. You haven't asked us in the appeal to take judicial notice of anything. You've taken the record as it is and argued it. And now you're trying to expand the record and saying we should take judicial notice. Well, Your Honor, I'm not . . . I'm not exactly sure what the requirements of 201 are right off the top of my head. However . . . I don't really particularly care about that. I'm just saying that the way I read the record, we weren't asked to take judicial notice of anything. We were supposed to take the facts as alleged in the motion for summary judgment pleadings. That's why we're here. We're just doing summary judgment. That's all. Well, one fact, the district attorney's decision to prosecute or not is a matter of causation. Had the district attorney decided . . . Exactly. And there's no evidence of that in the record. So we can forget that argument unless you can show me where I can find out evidence in the record. Because we're on summary judgment from the summary judgment papers. Yes, Your Honor. However, the court never got to that issue. It said . . . Let me ask you. Are you moving for us to take judicial notice of that? Yes, Your Honor. Well, if you go and look at Federal Rule of Evidence, I think it's 201 if I have my memory serves right. But there's a rule that deals with . . . There are certain requirements that you have to satisfy. So if you want to follow up on your motion by satisfying those requirements, perhaps Judge Reinhart will give you the time to do that. Well, before we do, did you make a motion for reconsideration for the district court? No, Your Honor. I don't believe we did. And you didn't ask the district court to take judicial notice after he gave you a decision, right? Your Honor, we're . . . So you want us to go back and redo it now? Yes, Your Honor. I'll ask for anything on my client's behalf. I will. However, the issue of whether or not the district attorney, the lies caused the district attorney to . . . Do you have a copy of the rules at home in your office? Yes, Your Honor. Okay. Well, you should study Rule 201. I think it's 201. I'm not embarrassing myself here by picking the wrong rule, but anyway. Go ahead. The district attorney's decision, whether or not the district attorney decided to prosecute based on the lies, is a matter of causation. Causation is always a question of fact for the jury, Your Honor. We could prove, we could show the jurors this officer lied, and whether or not the district attorney decided to prosecute my client based on said lies would then be up to the jury to decide based on the totality of the record, the evidence. All right. Thank you, counsel. Thank you, Your Honor. You should definitely go back and read 201. Yes, Your Honor. F, C, D, you know, a lot of things in there. Yes, Your Honor. And will the court grant plaintiff's counsel . . . Well, let us, you can file whatever you would like to file, and we'll let you know whether we're going to accept it. But don't be shy or timid. If you think, after you read the rule that Judge Kaczynski mentioned, if you think there's something you should do, do it, and then we'll rule on it. Thank you very much, Your Honor. On whether to accept it or not. Thank you. Case just argued will be submitted. Next case on the calendar for oral argument is United States v. Calderon-Segura.
judges: Reinhardt, Brunetti, Kozinski